238 N.J. Super. 225 (1990)
569 A.2d 822
JEAN CHAMBON, PLAINTIFF-RESPONDENT,
v.
NANCY CHAMBON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 19, 1989.
Decided February 7, 1990.
*226 Before Judges PRESSLER, LONG and LANDAU.
Kevin Daly argued the cause for appellant (Czarnecki and Daly, attorneys; Daniel G. Covine, on the brief).
Gloria R. Buckley argued the cause for respondent (Roy W. Breslow, attorney; Roy W. Breslow and Gloria R. Buckley, on the brief).
The opinion of the court was delivered by LONG, J.A.D.
Defendant, Nancy Chambon, appeals from the alimony and equitable distribution provisions of the final judgment of divorce which dissolved her marriage to plaintiff, Jean Chambon. In addition to her challenge to the substantive fairness of those provisions, she also claims that the procedure in this case which led up to the entry of the final judgment denied her due process. Because we agree that the procedure involved here was fundamentally unfair to defendant, we reverse the judgment and remand the case for a trial on the merits.
According to the complaint and answer, plaintiff and defendant were married in 1961.[1] Two children were born to them in *227 1963 and 1966. Both are emancipated. Plaintiff filed the complaint for divorce against defendant based on sexual desertion on November 10, 1987. Defendant answered and counterclaimed for divorce on the grounds of extreme cruelty. The divorce action was apparently the culmination of a long history of acrimony between the parties which generated an earlier domestic violence action resulting in plaintiff's exclusion from the marital home and eventually in defendant's exclusion from plaintiff's business premises. As a part of those proceedings, plaintiff was ordered to pay approximately $700 per week in support to defendant which included over $100 a week in medical, psychiatric and dental bills and three monthly mortgage payments of approximately $1100.
In June 1988, pursuant to a consent order, an expert (Robert Chalfin) was appointed to evaluate plaintiff's business, Chambon Electric, Inc. All arrears which had accrued were to be held in abeyance pending further order of the court. In October 1988, defendant moved for the consent order to be vacated, for increased support, for funds to complete an addition to the marital home, for an advance against equitable distribution and other relief. The motion was denied.
As the end of 1988 approached, defendant's relationship with her attorney had deteriorated badly. Defendant was apparently suffering from a mental disturbance and was undergoing psychiatric care. She was not communicating with her attorney at all and exhibited some irrational tendencies evidenced by an ex parte visit to a judge's chambers. During this period, the expert, Chalfin was making his evaluation of plaintiff's business. He prepared a preliminary draft report and forwarded it to both counsel in February, 1989. Because there were no communications between the defendant and her attorney, there is no evidence that she ever read the report or, if she read it, *228 that she understood it, although counsel apparently forwarded it to her.
On March 1, 1989 counsel for both parties appeared at a settlement conference in the trial judge's chambers at which time defendant's counsel advised the court and his adversary of defendant's lack of cooperation and "increasing state of depression and extreme irrational behavior." The judge nevertheless scheduled the case for trial on April 5, 1989. Plaintiff then filed a notice of application for equitable distribution seeking a hearing for April 3. On March 10, defendant's attorney forwarded a letter to defendant enclosing plaintiff's equitable distribution proposal, notifying her of the April 3 hearing date and requesting that she contact him to discuss the settlement. On March 18, defendant's counsel sent defendant the trial notice for April 5 and again sought a meeting. On March 29, defendant's lawyer moved on short notice to be relieved as counsel because of defendant's continued refusal to communicate with him and also because he had not been paid for his prior fourteen months of representation. His adversary filed a letter objecting to the motion on the ground that a delay would prejudice his client. On March 30, defendant wrote to the trial judge for a 30 to 60 day adjournment citing her "severe physical illness" and her inability to function in relation to the divorce. The letter was received on March 31 but no response was made. On April 3, a hearing took place. Although the trial judge had received defendant's counsel's motion to be relieved, after an off-the-record conference in chambers with the attorneys the matter proceeded to hearing without a decision on the motion. Defendant's attorney was required to continue to represent her.
The only witnesses were plaintiff and defendant. There were a number of disputed issues. One question involved certificates of deposit. Plaintiff stated that they existed and were worth $15,000. Defendant testified that they were long gone, having been liquidated for living expenses as a result of the accrual of arrearages by plaintiff. The house value was also in issue. *229 Plaintiff testified that the house was worth $180,000 according to a Century 21 appraisal. Defendant valued the house at $220,000 to $240,000. The parties agreed that a $50,000 home equity loan had been taken out to complete an addition on the marital premises. However, each claimed that the other had taken the money. Although over $40,000 was owed on the loan, the addition to the house was never completed. At the time of trial, total indebtedness on the house including the mortgage was about $70,000 to $75,000. The unfinished shell of the addition remained in a deteriorating state.
Chambon Electric, Inc. is an electrical contracting company with eight employees, three vans, an office, a warehouse, a shop and a garage. Plaintiff is the owner of all of the capital stock of the corporation. Plaintiff valued the business at $133,000 (Chalfin's preliminary estimate). Defendant, who had worked in the business throughout this 26 year marriage, claimed that it was worth many times more than that. Chalfin's own report specifically noted that his valuation did not include the fair market value of real estate owned by the business and that such real estate "should be considered when valuing this business."
Defendant testified that she was 55 years old, ill, unemployed and penniless. (She earned $657.50 in 1986). She stated that she was taking courses at Upsala College toward a paralegal degree which she could obtain within three to four years. According to defendant, her annual tuition was $3000. Plaintiff admitted to an annual income and benefits of approximately $63,000.
The trial judge awarded defendant the marital home (without deciding who had benefited from the $50,000 home equity loan) along with outstanding liabilities on it; the C.D.s "if there's anything left"; and the time-sharing condominium in Myrtle Beach subject to a mortgage. Plaintiff was awarded 100% of the business and absolved of liability on the matrimonial home and condominium. The trial judge awarded defendant $150 per *230 week in rehabilitative alimony for two years (a $541.00 per week reduction from the prior order). No provision was made for arrearages which defendant claimed as almost $8000, for defendant's medical or insurance needs or for the monthly mortgages of $1100. The judge then granted defendant's counsel's motion to be relieved.
At that point, according to defendant's certification in support of a motion for summary reversal, she left the courthouse after advising her lawyer that she was dissatisfied with the "settlement" of the case and expected a contested hearing to take place on April 5, 1989. On the same date, she wrote a letter to the judge confirming what she had said to her lawyer. The hearing transcript reflects that after the financial aspects of the case were concluded, the trial judge realized that he had not ruled on the divorce. He reconvened the hearing (apparently out of the presence of defendant) and granted a divorce on the grounds of an 18-month separation which was neither alleged in the complaint nor the counterclaim as the basis for a divorce. This appeal followed.
We do not address here the substance of defendant's claims with respect to the alimony and equitable distribution awards. We are only concerned with the procedures which led to the judgment. Our beginning point is that defendant was emotionally ill at the time of the divorce, a matter which is not in dispute. Indeed, plaintiff does not argue to the contrary. As a result of this illness which was known not only to counsel but to the trial judge, defendant was completely out of touch with her lawyer for the entire three months prior to the trial and uncooperative with him long before that. The lawyer himself referred to her "increasing state of depression" and her "extreme irrational behavior." On the day of trial, the trial judge had an off-the-record conference in chambers with defendant's counsel (who had sought to be relieved) and his adversary, while the apparently emotionally ill defendant who had not even spoken to her attorney for over three months waited *231 in the courtroom. Her request for an adjournment based on her illness was ignored. Such a procedure cannot be countenanced.
What should have occurred here was an on-the-record disposition of the motion by defendant's counsel to be relieved. Such a motion must be decided before any critical step in the proceeding occurs. Reserving decision is not an available option. The interests of both the lawyer and the client are compromised where a lawyer is required to represent a client if he has a legitimate basis to be relieved.
Presumably the judge heard counsel's arguments on the motion in chambers. That should have taken place in open court at which time the judge should also have inquired into the reasons for defendant's refusal to cooperate with her attorney and obtained her response to his motion to be relieved. Psychiatric evaluation may well have been necessary to ascertain if defendant was capable of proceeding under any circumstances. Depending upon the assessment of defendant's condition, the trial judge might have investigated the necessity of appointing a guardian ad litem for protection of her interests if competency was deemed in question.
Moreover, even if the trial judge determined on the record that defendant was mentally capable of proceeding (which seems doubtful to us) and that her lawyer was not entitled to be relieved, given what he knew of the non-communication with her lawyer for the preceding three months or more, the circumstances raised a serious question as to whether the trial should go forward.
Plaintiff argues here that the alimony and equitable distribution awards were entirely fair and that we should therefore affirm despite any infirmity in these proceedings. Because the trial judge failed to make comprehensive factual findings pursuant to R. 1:7-4 as to the includability and actual value of the assets and liabilities of the parties, it is impossible for us to assess this contention. As we have often said, failure to *232 perform the fact-finding duty "constitutes a disservice to the litigants, the attorneys and the appellate court." Curtis v. Finneran, 83 N.J. 563, 569-570, 417 A.2d 15 (1980) (citing Kenwood Assocs. v. Bd. of Adj. of Englewood, 141 N.J. Super. 1, 4, 357 A.2d 55 (App.Div. 1976)). Meaningful appellate review is inhibited unless the judge sets forth the reasons for his or her opinion. In the absence of reasons, we are left to conjecture as to what the judge may have had in mind. We do not intend to engage in such conjecture here.
With respect to alimony, plaintiff's claim of fundamental fairness seems doubtful on its face. Certainly this record presents a serious question as to the rationale for making a two-year rehabilitative alimony award to an unemployed, penniless, emotionally ill, 55-year-old woman. But even if plaintiff were correct and the substance of the judgment appeared unassailable, we would not affirm it. Every litigant is entitled to a day in court. What that means is not mere physical presence in the courtroom but also such mental and emotional stability as is required to participate meaningfully in the process. Also implied is that the litigant is represented by an attorney who is both prepared and committed to his client's cause. On this record, defendant's impaired mental abilities at the time of the divorce are not open to question. This situation was aggravated by the facts that she was out of touch with her lawyer for a long period before the divorce hearing; that her requests for an adjournment were ignored; and that her lawyer's motion to be relieved, which was made because he believed that under the circumstances he could not properly represent defendant at trial, was not decided before trial but was granted immediately following the trial in which that lawyer was compelled to participate. Likewise, the actions of the judge in conferring with counsel out of defendant's presence while the motion to be relieved was pending fell short of his due process obligation toward her. Under the circumstances, she should not be saddled with this judgment. If, as plaintiff contends, the financial aspects of the judgment are *233 entirely fair, defendant will likely agree to them when she is returned to emotional health or, if necessary, by way of the appointment of a guardian ad litem.
Reversed and remanded for trial.
NOTES
[1] There was confusion as to the date of the marriage during trial. Plaintiff acknowledged 1961 as accurate. Defendant claimed that the actual date was 1969 or 1979. All documents filed in the case reflect the 1961 date and the dates of the children's births give credence to that year as correct. However, the trial judge amended the complaint during trial to reflect the date of the marriage as 1969.