**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3655-21

DANIEL THOMPSON and
ELIZABETH THOMPSON,

     Plaintiffs-Respondents,

v.

GERALDINE JONES and
RHYS JONES,

     Defendants-Appellants.

_____

Argued October 10, 2023 – Decided November 9, 2023

Before Judges Sabatino and Marczyk.

On appeal from the Superior Court of New Jersey, Chancery Division, Cumberland County, Docket No. C-000021-21.

Ronald P. Sierzega argued the cause for appellants (Puff, Sierzega & MacFeeters, LLC, attorneys; Ronald P. Sierzega, on the briefs).

Terance J. Bennett argued the cause for respondents.

PER CURIAM

Defendants, Geraldine and Rhys Jones, appeal the trial court's April 11, 2022 order resolving a boundary dispute between defendants and plaintiffs, Daniel and Elizabeth Thompson.  Based on our review of the record and applicable legal principles, we vacate the court's order and remand for a new trial.

I.

The Thompsons own real property in Leesburg.  The Joneses own a property adjacent to the Thompsons' property.  The parties dispute the location of the property line between their properties.  The Joneses argue their survey indicates the Thompsons encroach on their land by 5.88 feet.  According to the Thompsons, their land stops roughly two feet from the house on the Joneses' property.  Both neighbors presented surveys supporting their respective positions.

In September 2021, the Thompsons filed a complaint and order to show cause to establish the boundary line between the properties.  Attached to the Thompsons' complaint was a January 1999 survey by William Reale, which the Thompsons obtained before purchasing the property in 1999.  They also attached

A-3655-21

a May 2021 survey prepared by Guy DeFabrites, which set forth the same boundary as the Reale survey.[1]

On January 14, 2022, the Joneses filed an answer. On January 19, 2022, the court entered an order with a seven-week discovery schedule and a discovery end date of March 11, 2022. A trial was scheduled for April 4, 2022. During discovery, the Joneses produced their own survey by Feldman & Associates establishing a different property line than claimed by the Thompsons.

On March 4, 2022, the Joneses moved for summary judgment. The Thompsons objected to the motion as untimely.[2] The court scheduled oral argument for the morning of the April 4, 2022 trial date. The court denied the motion based on the conflicting DeFabrites and Feldman surveys, which it found

---

[1] The DeFabrites survey is also referred to as the "Fralinger survey" throughout the record. The Thompsons obtained the second survey due to the passing of Reale. On October 19, 2021, the court granted the relief sought in the order to show cause establishing the boundary line consistent with the DeFabrites and Reale surveys. That order was then vacated on December 17, 2021.

[2] Plaintiffs objected based on Rule 4:46-1, which provides, "[a]ll motions for summary judgment shall be returnable no later than [thirty] days before the scheduled trial date, unless the court otherwise orders for good cause shown . . . ." Here, because motions for summary judgment are typically filed at the close of discovery, defendants would not have been able to comply with this rule as the discovery end date of March 11, 2022, was within thirty days of the April 4, 2022 trial date. Accordingly, the court correctly considered the motion.

A-3655-21

created an issue of material fact. The judge commented on the need for expert testimony in denying the motion. Specifically, the court noted:

> Both surveys use prior deeds for their basis and . . . are completed by reputable surveyors, ostensibly who should be experts in a case in this type.
>
> . . . .
>
> There are many questions as to the determination of the property line between the subject properties and . . . it is . . . not that [d]efendant can not prove their assertions, but they have not done so in regard to this motion without genuine dispute. <u>That's the need for experts to come in and tell me what those facts are</u>.

[(emphasis added).]

Immediately following the denial of the motion, the Joneses' prior counsel moved for an adjournment of the trial for the purpose of producing an expert witness to testify. Alternatively, he requested to produce the expert on a later date so as to allow the fact witnesses present at court to testify. The trial judge denied the motion because the Joneses did not "have an expert for . . . [the] first day of trial . . . [o]r one identified in [their] trial memo[,]" and did not "notice [Feldman] as a witness on [their] witness list previously."[3] The trial

---

[3] This was the first trial listing.

commenced, and testimony was taken of fact witnesses and the parties, but no experts.

The trial continued on April 11, 2022. Prior to additional testimony being heard, the Joneses' attorney moved to withdraw as counsel. In support of his motion to withdraw, the attorney stated:

> throughout the course of this litigation[,] I have been consistently counseling my clients to refrain from any type of interference whatsoever with respect to the facts that are presented to this [c]ourt. There has been a piece of testimony that was submitted as well as documentary evidence that was submitted to this [c]ourt that my client, I am now informed, was much more deliberately involved with than I had ever imagined.
>
> And information that I had received on Tuesday [April 5, 2022,] gave me a very firm smoking gun type inclination that my suspicions from prior to there, which I had counseled the client against and questioned the client on, had been informed by the client were denied, was in fact the case.
>
> I am refrained to some extent, although I don't want to perpetuate a fraud in court. That's what this is about, Judge. I don't want to perpetuate a fraud on the court by having my license and my credibility as an attorney be used to submit evidence to this court that may or may not [be] true.

The court rejected the motion because it was near the end of trial and the Joneses had rested. The trial continued, and the Thompsons' counsel called a rebuttal

5

A-3655-21

witness.  Thereafter, counsel gave closing arguments.[4]  Ultimately, the trial court found in favor of the Thompsons based on the surveys, tax maps, credibility of certain witness, and historical documents.  The court also questioned the trustworthiness of the Feldman survey, as it was based in part on a description of the property by the Joneses and without the benefit of a title report.  At the end of the trial, the Joneses' attorney again moved to withdraw as counsel, and the court granted the application.

Thereafter, the Joneses hired a new attorney, who moved for a new trial.  The Joneses argued the court's denial of the motion to adjourn the trial for them to produce an expert to testify was an error.  Additionally, the Joneses asserted there was not a fair trial because the court heard prejudicial information regarding them when their attorney moved to withdraw as counsel.  The judge noted he considered the parties' decision not to present experts as a "trial strategy . . . ."  Further the judge stated, "the [c]ourt questioned both attorneys as to this matter going forward without experts, both before trial started and weeks before the trial started."  Ultimately, the court denied the motion for a new trial.

---

[4]  The Joneses' attorney's closing argument was a few sentences and was apparently impacted by his concern about perpetrating a fraud on the court.

The Joneses subsequently moved for reconsideration of the motion for a new trial and relief from judgment based on newly discovered evidence. Specifically, the Joneses argued the new evidence was an email in which defendants' expert DeFabrites acknowledged his survey was faulty. The Joneses also asserted DeFabrites provided the Thompsons with a revised survey, which was consistent with the Feldman survey. It was alleged the Thompsons filed their complaint "despite knowing prior . . . De[F]abrites' opinion was that the Reale survey was incorrect and that the Feldman survey was the correct one." According to a purported email sent from DeFabrites to Geraldine Jones in August 2021, DeFabrites stated, "Mrs. Jones, I have revised my survey [three] weeks ago and have been out of work. I told Mr. Thompson about it. . . . They are not my corners, they are Reale[']s Corners." In September 2021, in another email, DeFabrites stated:

> HI MRS. JONES, you don't need another survey. Since this is a property line dispute and I did the Thompsons survey I can't do yours, it would be a conflict. <u>You have Mr. Feldman[']s survey which is correct</u>. I revised my survey [a w]hile ago once I got the older deeds which were hard to get because you have to make appointments to get in the court house because of covid. Both surveys agree, <u>[m]y first survey should have never gone out, it was drawn incorrectly</u>. It did not show the former deed lines compared to the Reale survey line like I wanted it to. The Reale survey was done in 1999 and the Thompsons believed that was right and thought

7

that was the[ir] property since 1999. I don't know how Reale arrived at his property line[,] it doesn't match the older deeds. Your deed is only a Block, Lot deed has no bearings and distances so in order to get bearings and distances you have to go back to former deeds. Not making excuses just some of the problems.

[(emphasis added).]

The court denied the motion for reconsideration noting the purported emails were in the possession of the Joneses prior to the filing of the lawsuit, and they were at fault for not producing the emails at trial. This appeal followed.

II.

The Joneses contend the trial court erred in denying their motion to adjourn the trial to retain an expert. They further argue that a new trial was warranted given: (1) the alleged irreconcilable differences between the Joneses and their prior counsel during trial; and (2) the lack of expert testimony, in the aggregate, had the capacity to affect the outcome of the trial.

More particularly, the Joneses argue the motion for adjournment should have been granted by the trial court because: (1) Rule 4:46-1 provides that motions for adjournment should be liberally construed; (2) this was the first trial listing, and the case had only been active for two-and-a-half months; (3) the Joneses' prior counsel did not have an available expert for the first day of trial but could have secured Feldman for the second day of trial; and (4) given the

8

number of deeds and conflicting surveys, expert testimony was necessary for a just determination of the issues.

"[W]e review a trial court's denial of a request for an adjournment 'under an abuse of discretion standard.'" Escobar-Barrera v. Kissin, 464 N.J. Super. 224, 233 (App. Div. 2020) (quoting State ex rel. Comm'r of Transp. v. Shalom Money St., LLC, 432 N.J. Super. 1, 7 (App. Div. 2013)). "Thus, refusal to grant an adjournment will not lead to reversal 'unless an injustice has been done.'" Ibid. (quoting Nadel v. Bergamo, 160 N.J. Super. 213, 218 (App. Div. 1978)). Importantly, "[o]ur courts have broad discretion to reject a request for an adjournment that is ill founded or designed only to create delay, but they should liberally grant one that is based on an expansion of factual assertions that form the heart of the complaint for relief." J.D. v. M.D.F., 207 N.J. 458, 480 (2011). An adjournment should ordinarily be liberally granted in situations such as the one here where the rule at issue specifically provides that standard. See R. 4:46-1.

If a court's disposition of a summary judgment motion is not made known to the parties at least ten days before trial, a judge should liberally grant a motion for an adjournment sought following that disposition. See R. 4:46-1. Pursuant to Rule 4:46-1:

> All motions for summary judgment shall be returnable no later than [thirty] days before the scheduled trial date, unless the court otherwise orders for good cause shown, and if the decision is not communicated to the parties at least [ten] days prior to the scheduled trial date, an application for adjournment shall be liberally granted.

The reason for this liberal adjournment standard is:

> [i]n recognition of counsel's need to know the disposition of the summary judgment motion in sufficient time to prepare for trial if the motion is denied or only partially granted, the rule provides that if the disposition is not made known to counsel at least [ten] days prior to the scheduled trial date, an application for adjournment shall be liberally granted.
>
> [See Pressler & Verniero, Current N.J. Court Rules, cmt. on R. 4:46-1 (2024).]

Moreover, "if the motion is denied in full or in part, and counsel need more time to prepare, the grant of the adjournment should be virtually automatic." See Pressler & Verniero, Current N.J. Court Rules, cmt. 3.2 on R. 4:36-3(b) (2024).

We conclude the court should have granted a short adjournment to allow defendants to have their expert testify at trial. We recognize the court here scheduled the trial in its initial management order. However, a relatively brief adjournment would have given defendants an opportunity to secure the testimony of Feldman. The court was rightfully concerned about judicial economy because certain fact witnesses had appeared for trial on the date the

10

court decided the summary judgment motion and were prepared to testify. Nevertheless, these witnesses could have still testified while allowing the Joneses to produce their expert to testify at a later date, particularly when it became clear the court was not going to be able to complete the trial on April 4, 2022. We are also mindful the parties indicated they intended to rely on their surveys for trial, and certainly the better practice would have been for the Joneses to have provided the court with more notice of their intent to call an expert to testify. However, after denying the summary judgment application because of disputed issues of material fact, the court noted there was a need for experts to "come in and tell me" about those facts and presumably the basis for their respective opinions. That is, the court appeared to recognize it would benefit from expert testimony and not simply the survey documents.

We further observe the parties were already going to rely on their surveys at trial, and there was no unfair surprise to the Thompsons if Feldman were to testify.[5] This could have been accomplished in short order along with providing the Thompsons the same opportunity to call their expert to testify. Despite the

---

[5] To the extent the Thompsons asserted they were prejudiced because they had not been able to depose Feldman, that could also have been remedied by the court without unduly delaying the trial.

best intentions of the court, we determine it misapplied its discretion in not adjourning this non-jury trial for a brief period under the facts of this case.

We briefly comment on other issues raised on appeal and the extremely unusual circumstances facing the parties on remand. The Joneses produced emails purportedly written by DeFabrites to defendants in which he states, "Feldman's survey . . . is correct" and that he revised his own survey once he obtained the older deeds which were difficult to obtain because of the COVID-19 pandemic.[6] He further notes his survey "should have never gone out." To add to this strange situation, the Thompsons' counsel comments—regarding his own expert DeFabrites—"[he] has proven an extremely unreliable witness in any case and would be highly impeachable in any new trial." Additionally, DeFabrites also allegedly prepared an unsigned supplemental survey, which was not produced during the trial.[7] We take no position on the relevance or

---

[6] We agree with the trial court these emails were not newly discovered evidence as they were in the possession of defendants. See Rule 4:50-1(b). Nevertheless, because we are remanding for a new trial, the parties may explore these issues to the extent plaintiffs still intend to rely on DeFabrites.

[7] The Thompsons' counsel states the supplemental survey was "facially defective, contains gross factual misrepresentation[s], is unsigned, undated, and unsealed, and would not have been appropriate for entry as trial evidence . . . . It was not hidden from the [c]ourt; [the Thompsons] took one look at it and relegated it to the trash bin where it belong[ed]."

admissibility of the revised survey, but at the very least it could have possibly been utilized to impeach DeFabrites if he had testified.[8]  We reference these issues because the trial court relied on DeFabrites' survey in issuing its opinion and ruling in favor of plaintiffs.

Furthermore, defendants' trial attorney moved to be relieved as counsel on the second day of the trial.  He noted, "this Feldman survey that was provided to me as truthful had a probability of not being truthful as was presented to the [c]ourt through my license."[9]  In short, there appear to be serious concerns with both experts whose surveys were submitted at trial and relied upon by the court in rendering its decision.

Based on the foregoing, we vacate the trial court's April 11, 2022 order and remand for a new trial.  Given the serious issues noted above concerning the

---

[8] Plaintiffs have advised they obtained another expert after trial, and we assume that expert would be utilized at any further trial.

[9] We have previously observed, "[t]he interests of both the lawyer and the client are compromised where a lawyer is required to represent a client if he has a legitimate basis to be relieved."  Chambon v. Chambon, 238 N.J. Super. 225, 231 (App. Div. 1990).  However, because we are remanding for further proceedings, we need not address defendants' arguments that defendants' trial counsel did not provide a proper closing argument or cross-examine the rebuttal witness on the last day of trial because of the concerns raised about Feldman's report.  We also make no determination as to whether reliance on the expert would have been a "fraud on the court."

surveys produced by the parties at trial, the trial court shall conduct a case management conference within thirty days to determine what experts the parties intend to utilize at the re-trial. The court shall fix reasonable deadlines for the parties to obtain experts, if requested, and complete expert discovery so this matter can be adjudicated anew on its merits. We do not retain jurisdiction.

To the extent we have not specifically addressed any of the parties' remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Vacated and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION